UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA,
     Plaintiff,

vs.                                                    CASE NO. CASE NO. 3:14-CR-00075

FERNANDO JOSUE CHANG MONROY,

     Defendant.
_____/

## DEFENDANT'S POSITION ON SENTENCING AND REQUEST FOR VARIANCE SENTENCING

The Defendant, **FERNANDO JOSUE CHANG MONROY**, **(CHANG MONROY)** by and through undersigned counsel hereby files his objections to the Pre-Sentence Investigation Report and Sentencing Memorandum.  At sentencing in this matter, **CHANG MONROY** requests this Court impose a variance sentence.

On March 3, 2016 the Defendant pled guilty before this Honorable Court.  At that time, the Court noted that the Plea Agreement did not contain an agreement between the Government and the Defense regarding Guidelines or Sentence.  The Defendant disagrees with the Government's Guideline recommendation of a 2 Level adjustment for leader/organizer.  In addition, the Defendant disagrees with the Government's recommended sentence of 262 months.  It is the Defendant's position that the Court should grant a downward variance and sentence the Defendant to 135 months.

1

## OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT

The Defendant **CHANG MONROY** objects to paragraph 21 of the Pre-Sentence Investigation Report under "Adjustment for Role in the Offense." Paragraph 21 indicates that the Defendant was an organizer, leader or supervisor in criminal activity other than described in (a) or (b) pursuant to USSG §3B1.1(c).

The Defendant **CHANG MONROY** denies any organizational or directional role in the offense. The Defendant pled guilty to Count 1 of the indictment which charges conspiracy to possess with the intent to distribute cocaine on a U. S. registered aircraft. It should be noted the inclusion of "U. S. registered aircraft." This is because the Defendant's position in the conspiracy was nothing more than that of a "broker" buying and selling aircraft to individuals who would transport drugs, eventually destine for the United States. As a "broker," the Defendant would purchase aircraft, and sometimes modify them with additional fuel tanks or do needed repairs to increase their value. The Defendant would be paid either with money or drugs or a combination of both money and drugs. The drugs would then be sold and converted into money to pay for the aircraft, the Defendant's commission, as well as the commission and expenses involved with purchasing the aircraft.

The Pre-Sentence Investigation Report under "Offense Conduct" in paragraph 2, indicates "Chang Monroy agreed with Conspirator #1 to purchase aircraft registered in the United States from an aircraft seller located in the Eastern District of Virginia." The reality is, Conspirator #1 would find aircraft in the United States, negotiate the purchase of the aircraft, at which time the Defendant would pay for the aircraft. For his services, Conspirator #1 was paid a commission. Regarding the aircraft, which was the subject of this purchase, Conspirator #1 was paid a commission in drugs.

2

The Defendant **CHANG MONROY** also "brokered a deal" between a Honduran drug trafficking organization (DTO) and Conspirator #2.  Conspirator #2 had the ability to provide safe passage for the aircraft through Venezuelan airspace.  The Defendant was paid a fee for "brokering the deal" with Conspirator #2.  Conspirator #2 was also paid a fee from the Honduran (DTO) for providing the safe passage.

It should be noted that the Defendant exercised no decision-making authority over the drug trafficking organizations, which were using the aircraft to smuggle drugs.  The Defendant's participation in the offense was strictly that of a "broker."  The Defendant received payment for the aircraft and a fee for his services.  The leaders and organizers of the drug trafficking organizations claimed a right to a much larger share of the fruits of the crime.

The Defendant **CHANG MONROY** did not participate in the planning or organizing of the drug trafficking venture by the Honduran or Colombian drug trafficking organizations. The Defendant's illegal activity was that of a "broker."  The Defendant did not exercise any control or authority over the drug trafficking organizations that purchased his aircraft.

The Defendant **CHANG MONROY** did not and could not exercise any supervisory responsibility over the drug trafficking organizations by controlling them or directing the terms of their purchases or sales.  In addition, the Defendant **CHANG MONROY** had no supervisory authority regarding how much cocaine was purchased, where it was purchased from or where it was to be delivered.

The Fourth Circuit case of *United States vs. Slade*, 631F3d 185 (4th Cir. 2011), is directly on point with the Defendant **CHANG MONROY**'s situation.  The Defendant Slade was a mid to upper level member of a drug conspiracy.  Slade sold and delivered cocaine or cocaine base to his own clientele and to other members of the conspiracy who in turn sold the drugs to their clientele.

3

Certain co-conspirators also sold cocaine and cocaine base for Slade on various occasions.  The Court found that although Slade supplied large quantities of drugs to some co-conspirators who in turn sold those drugs to their clientele, there was no evidence that Slade exercised any supervisory responsibility over these persons by controlling them or directing the terms of their sales.

In this case, the Defendant **CHANG MONROY** sold aircraft to drug dealers who used them for the transportation of drugs.  However, as stated above, the Defendant **CHANG MONROY** had no supervisory capacity over those drug trafficking organizations. Likewise, the aircraft mechanics that performed maintenance on the aircraft, the individual who added extra fuel tanks and the person who was able to provide safe passage through Venezuela airspace were not under the supervisory control of the Defendant **CHANG MONROY**.  They were independent contractors who made their own decisions regarding their activities.  They set their own prices for the services they provided and took no direction from the Defendant **CHANG MONROY**.

The Government has the burden of proving by a preponderance of the evidence, the existence of the aggravating role.  Based on the foregoing, the Government has not met its burden and the Defendant would request that this Honorable Court strike the adjustment for Role in the Offense eliminating the 2 Level increase.

## **REQUEST FOR VARIANCE SENTENCE**

After *United States v. Booker*, 543 U.S. 220 (2005), the Federal Sentencing Guidelines are advisory and courts of appeals review sentences for reasonableness.  *See United States v. Hughes*, 401 F.3d 540, 546-47 (4th Cir. 2005).  In *Rita v. United States,* 127 S.Ct. 2456 (2007), the Supreme Court stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guideline range.  The district court must then consider all of the factors listed in § 3553(a) and determine if they support the sentence requested by a party.

4

"In so doing, he may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38 (2007) (citing, *Rita*).  "It has been uniform and constant in the federal judicial tradition for the sentencing judge *to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate*, sometimes magnify, the crime and the punishment to ensue." *Id*. (citing *Koon v. United States*, 518 U.S. 81, 113 (1996) (emphasis added)).   Indeed, the Court in *Gall* rejected a rule that required "extraordinary circumstances" be found to impose a sentence outside of the guidelines.  *Gall*, 552 at 47.

The statutory factors that must be considered in determining a just sentence include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. § 3553(a).

The primary directive of § 3553(a) is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.  A sentencing court must therefore impose the minimally sufficient sentence that accomplishes the statutory purposes of sentencing.

The need to avoid unwarranted sentencing disparities is a factor to be considered by this Court.  In the past few years there have been several arrests of Guatemalans and Colombians participating in drug smuggling ventures.  Most of these prosecutions have taken place in the District of Columbia and the Eastern District of Virginia.  Defendants in much higher positions than Defendant **CHANG MONROY** in this case, have pled guilty and have been sentenced in various

5

Courts.  Among the defendants in the Guatemalan organization who have pled guilty and agreed to cooperate, Defendant **CHANG MONROY** is unaware of anyone receiving a sentence higher than 235 months.

The Sentencing Commission from the inception of the Guidelines has indicated that one of the major goals is to provide parity in sentencing.  In fact, within the policy statement of the Sentencing Guidelines the Commission states "Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offense committed by similar offenders."  This Honorable Court, as well as all Federal Courts, must struggle with the issue of parity in sentencing when deciding the appropriate punishment.

 In fact, the Government has recognized the importance in avoiding unwarranted sentencing disparities.  In *United States of America vs. Dionisio Vera*, ***Case No. 1:11-cr-308***, before the Honorable Liam O'Grady, the Government filed a position with respect to sentencing.  In its Position, the Government stated, "[i]n avoiding unwarranted sentencing disparities, it is necessary to take into account the sentences imposed on other Co-Conspirators and their relative culpability."  Also within that document, the Government pointed out certain characteristic of the Defendant, to wit "The Defendant has no criminal history in the United States.  The Defendant has proceeded in a fashion consistent with his express desire to change his life, to return to his family in Colombia and lead a law-abiding life.  The Defendant is certainly equipped to be a productive member of society, should he choose to be."  (DCDN 279, p. 3).

The Defendant **CHANG MONROY** would request this Honorable Court keep in mind the words of the Government regarding parity in sentence and characteristics the Government believes are important in regards to sentencing.

The Dionisio Vera case is part of a large prosecution of 17 Defendants in Eastern District of

6

Virginia before the Honorable Liam O'Grady.  It provides a good example of comparative sentences with Defendants similarly situated as Defendant **CHANG MONROY**.

The criminal conduct in the above-mentioned case before Judge O'Grady was outlined by the Government in its position of the United States with respect to sentencing filed for **Defendant Jose Alexander Munoz Novoa** (Munoz).   (DCDN 87; 1:11cr308).  The Government wrote "… the Defendants ran a drug trafficking organization that operated cocaine manufacturing laboratories; a transportation and logistics network to transport the cocaine from labs in the central part of Colombia to ports located on the coast of Colombia; facilities to store the cocaine and construct hidden compartments for illicit shipment; and front companies in Honduras.  From Honduras the cocaine was sold to the Mexican cocaine distributors for ultimate distribution in the United States. Approximately 7 tons of cocaine were seized in Colombia in 4 separate seizures…" (Id., p. 2).  The Government went on to state, "… the Defendants fabricated export paperwork and filled the containers with legitimate cargo to conceal the cocaine destined for ports in Honduras [and] . . . the Defendants then laundered the drug proceeds, in United States dollars, back to Colombia." (DCDN 87, p. 3).

The criminal activity of this DTO, as outlined by the Government covers every aspect of criminal activity involved in the trafficking of drugs.  From the manufacturing laboratories, to the transportation and the logistic network to move the drugs from the labs to the ports of Colombia, including the storage, the use of front companies in Honduras, distribution to Mexican cocaine distributors and finally return of the proceeds from the sale of the drugs back to Colombia in U. S. dollars.

The Defendant, **CHANG MONROY** would request that the Court take note of some of the sentences of the Defendants responsible for the above-described criminal conduct.  Javier Rodriguez

Torres (Torres) is the lead Defendant on the indictment.  Torres was not only charged in ***Case No. 1:11-cr-308*** but also in ***Case No. 1:13-cr-25***, a separate case involving conspiracy to import cocaine using non-commercial aircraft.  Torres was assigned a 4 Level enhancement for exercising a managerial or supervisory role by Probation.   In the Government's position with respect to sentencing, the Government stated "There is no question that this Defendant was a major player in Colombian cocaine distribution.  The Defendant, however, did not exercise decision making authority with respect to the drug trafficking organizations that are the subjects of this prosecution." The Government went on to say, "With respect to the conspiracy to import cocaine using non-commercial aircraft (1:13-cr-25), investigation has not revealed the Defendant held a leadership position." The Government then recommended a sentence of 168 months, the high end of a Level 33 Guideline.  Considering the fact that a 4 Level enhancement for managerial or supervisory role was recommended by Probation, the Defendant being charged in separate cases, and a recommendation of 168 months by the Government, the Honorable Judge Liam O'Grady imposed an appropriate sentence of 136 months.

The second Defendant on the indictment is **Dionisio Vera** (Vera).  Vera also received a 4 Level enhancement recommendation for managerial or supervisory role.   Once again the Government stated "There is no question that this Defendant was a major player in Colombian cocaine distribution."  The Government once again stated that no enhancement should apply and then recommended a sentence of 136 months, which Judge O'Grady imposed.

**Defendant Jose Alexander Munoz Rivera** was an investor and managed the money for the drug trafficking organization.  He received a sentence of 144 months.

**Defendant Heriberto Fernandez Rimirez** was considered a manager and supervisor who coordinated activities of individuals responsible for the transportation, receipt and storage of the

8

drugs.  A sentence of 144 months was imposed.

That case clearly shows that Probation and Government recommendations are not binding in the Eastern District of Virginia.  Accordingly, Defendant **CHANG MONROY** requests this Court to take into consideration the Defendant's criminal conduct, as well as the sentences of other Defendants involved in much more extensive criminal activity, in deciding the role in the Offense and the appropriate sentence.

Additionally, there are many cases from other jurisdictions that the Defendant can point out involving Defendants with much more criminal activity and playing a larger role in the conspiracy, who were sentenced far below the recommendation by the Government in this case.  Those citations are not included in this pleading, but undersigned counsel can proffer them to the Court at sentencing.

### *Other 18 U.S.C. §3553 Factors*

Defendant **CHANG MONROY** was arrested in Guatemala on September 10, 2015.  Shortly thereafter, **CHANG MONROY** contacted undersigned counsel regarding representation. Undersigned counsel's first meeting with the Defendant occurred on October 7, 2015 in a Guatemalan jail.  During this initial meeting the Defendant clearly expressed his desire to waive all extradition rights, go to the United States as soon as possible, plead guilty and cooperate with the Government.  Upon undersigned counsel's return to the United States, the prosecutor and agent in the case were contacted and informed of **CHANG MONROY** desires.  The Defendant did waive all extradition rights and had his initial appearance on December 2, 2015, in Richmond, Virginia.  In a country like Guatemala, where extradition can take years, because of **CHANG MONROY'S** efforts, he was in the United States in less than 90-days.

At the first appearance hearing, **CHANG MONROY** once again reiterated his desire to

cooperate and plead guilty.  The Government requested debriefings as quickly as possible and after the Government and Defense counsel's schedules were considered, December 17 and 18, 2015 were the selected dates.

     **CHANG MONROY** is 37-years old and was born in Guatemala.  His father passed away approximately 3-years ago and his mother resides in Spain.  **CHANG MONROY** was raised by his mother in poor conditions in Guatemala.  He last saw his father at the age of 12 and during those 12-years saw his father no more than 5 times.

     Defendant **CHANG MONROY** would ask the Court to consider the following factors that include those factors outlined by the Government.

     Defendant **CHANG MONROY** has no criminal history in the United States or Guatemala. Upon his arrest the Defendant immediately and voluntarily waived all rights to extradition, being transferred to the United States in less than 90-days.  Upon his first meeting with counsel **CHANG MONROY** clearly stated that he would waive all rights to extradition and wanted to plead guilty and cooperate with the United States.  Upon arrival into the United States within 15-days, the Defendant began debriefings.  This certainly shows that **CHANG MONROY** has proceeded in a fashion consistent with his expressed desire to change his life, to return to family in Guatemala and to lead a law-abiding life.  As the Government knows from the debriefings, **CHANG MONROY** is an intelligent and motivated individual who can certainly become a productive member of society. **CHANG MONROY** has never questioned his guilt and has not asked for discovery.

<u>**CONCLUSION**</u>

     Considering the need for parity in sentencing, as well as the individual factors of **CHANG MONROY**, the Defendant believes that an appropriate sentence would be 135 months.

              Respectfully submitted,

10

s/ Dennis N. Urbano
DENNIS N. URBANO, ESQUIRE
**On behalf of Fernando Josue Chang Monroy**
11440 N. Kendall Drive, Penthouse 400
Miami, Florida  33176
(305) 595-0866
durbano@bellsouth.net

 s/ Amy L. Austin
AMY L. AUSTIN, ESQUIRE
VSB # 46579
**On behalf of Fernando Josue Chang Monroy**
101 Shockoe Slip, Suite M
Richmond VA  23219
(804) 343-1900
amyaustinlawyer@gmail.com

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was electronically filed with the Clerk of the Court using CM/ECF on this 11th day of August, 2016.  An electronic notification will be sent to Assistant United States Attorney Erik Siebert.

s/ Amy L. Austin
AMY L. AUSTIN, ESQUIRE
VSB # 46579
**On behalf of Fernando Josue Chang Monroy**
101 Shockoe Slip, Suite M
Richmond VA  23219
(804) 343-1900
amyaustinlawyer@gmail.com

11

12